**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

MARSBY TRIBUE, JR.
and ESSIE TRIBUE, jointly and severally,

       Plaintiffs,

vs.                                             Case No.: 3:04cv286/RV/EMT

DEPUTY STEVEN HOUGH, individually and in
his official capacity as Deputy Sheriff of
Okaloosa County, Florida.

       Defendants,
_____/

**ORDER**

In this Section 1983 action, plaintiffs Marsby Tribue, Jr., and Essie Tribue allege that defendant Deputy Steven Hough violated the Fourth Amendment when he demolished the plaintiffs' abandoned residential property in Okaloosa County, Florida, in order to abate a public nuisance. The defendant challenges Marsby Tribue's standing because of the execution of a quit claim deed, which purported to convey all of Marsby Tribue's interest in the property in question to his daughter, Modesty Michelle Kent. On January 6, 2006, this court held an evidentiary hearing to address Marsby Tribue's standing

**I.    FACTUAL BACKGROUND**

During the course of the evidentiary hearing, both Marsby Tribue and his daughter, Modesty Kent, relayed the circumstances which led to the execution of the quit claim deed. In 1999, Marsby Tribue became very ill. On one occasion, Modesty Kent drove her father home from his doctor's appointment, and Marsby Tribue relayed his concern to his daughter that he may become too incapacitated to take care of the Okaloosa County property. He was worried that, because of his declining health, his

wife at the time, Essie Tribue, would need assistance addressing issues related to the maintenance of the property. He was also concerned that if he died, his wife would not be able to handle the property by herself. Therefore, he asked Modesty Kent to have some sort of paper work drawn up which would authorize her to oversee his property and allow her to assist her mother.

In response to Marsby Tribue's request, Modesty Kent determined that she needed some type of document authorizing her to exercise partial control over the Okaloosa County property. Since she had no legal experience or training, she went to her local office supply store and asked the store clerk for some type of legal document "related to land." The document that the store clerk provided to her was a quit-claim deed. Modesty Kent then took the quit-claim deed to her father, and the deed was signed, notarized, and purportedly attested by two witnesses on February 22, 1999, ten months before the demolition of the property.

Subsequently, Modesty Kent placed the deed in a safe at her house. After signing the quit claim deed, she and her father never discussed it again. Mr. Tribue explained that he trusted his daughter to "do the right thing" with the document, and he knew that she understood that he was not giving her his interest in the home. Rather, Modesty Kent and Marsby Tribue both explained that the deed was only supposed to be a "back-up" in case something happened to him. In fact, Modesty Kent explained that she forgot about the deed's existence until over three years after it was signed, when she had been cleaning out her safe. After she found it in her safe, she recorded the deed on June 13, 2002. She did not discuss the recording of the deed with her father. Rather, she stated she simply recorded it because she thought she should.

## II.  DISCUSSION

It is well established that a party has standing to prosecute a claim in federal court only if he is the "real party in interest." <u>United States v. 936.71 Acres of Land,</u>

More or Less, in Brevard County, Florida, 418 F.2d 551, 556 (5th Cir. 1969). See also, Fed.R.Civ.P. 17(a). Requiring a party to be a "real party in interest" is a means by which federal courts determine whether a party possesses an enforceable right. Although the question of who is a proper party is procedural and governed by federal law, its resolution may depend on the underlying substantive state law. American Nat. Bank and Trust Co. of Chicago v. Weyerhaeuser Co., 692 F.2d 455, 460 (7th Cir. 1982). In other words, in cases such as this one, where the plaintiffs claim a right to sue based on their property interest, state substantive law must determine the true owner of the property interest at issue. See, e.g., DM II, Ltd. v. Hospital Corp. of America, 130 F.R.D. 469 (N.D. Ga. 1989).

Under Florida law, the effective conveyance of property by deed requires compliance with Florida Statute, Section 689.01, which provides that the deed must be signed in the presence of two subscribing witnesses by the party conveying the property. And, to be recordable, it must be acknowledged and notarized. In addition, if a deed is to make a valid conveyance of land, there must be a delivery of the deed. James v. Mabie, 819 So.2d 795, 797 (Fla. 1st DCA 2002). Kerr v. Fernandez, 792 So.2d 685, 687 (Fla. 3d. DCA 2001); Howarth v. Moreau, 430 So. 2d 576 (Fla. 5th DCA 1983). Delivery is an essential requisite of the execution of a deed conveying valid legal title, and without delivery nothing passes to the grantee. Howarth v. Moreau, supra, 430 So. 2d 576.

Nevertheless, even though a physical delivery of a deed may occur, when a grantor gives a grantee possession of a deed with the intent that it only become operative on the happening of some contingency, such as the death of the grantor, legal title to the property does not pass to the grantee until the condition precedent is satisfied. In this case, Marsby Tribue intended the deed to take effect only in the event that he became incapacitated or died. Accordingly, after Marsby Tribue executed the deed, Modesty Kent stored it in her safe at home and did not take any

further action for almost four years.  The fact that Modesty Kent eventually recorded the deed is not dispositive because it is the intent of the grantor that is determinative. Marsby Tribue and Modesty Kent agreed that Tribue did not intend for his daughter to receive and hold the full legal and equitable title to the property.  She was, apparently, to use the document only if it became necessary because of Marsby Tribue's death or disability.  Instead, she recorded the deed without discussing it further with her father, and admittedly before the agreed up conditions occurred.  Parramore v. Parramore, 371 So. 2d 123 (Fla. 1st DCA 1978).

Further, a valid conveyance may have an associated intent that equitably affects the nature of the conveyance.   Based on the evidence, it appears that Marsby Tribue and Modesty Kent may have  intended to create the equivalent of a Florida durable power of attorney, but they inaccurately executed a deed instead.  Under Florida law, a durable power of attorney grants one party the authority to act as the other party's agent or attorney-in-fact, even in the event of a disability.

Based on circumstances surrounding the execution of the deed and the intent of the parties, it seems that a resulting trust was created under Florida law.  A resulting trust arises by operation of law when a grantor makes a disposition of property under circumstances that raise an inference that he did not intend the grantee to have the beneficial interest in the property.  Johnson v. Craig, 28 So. 2d 696 (Fla. 1947); Bullard v. Bullard, 380 So. 2d 1090 (Fla. 3d DCA 1980).  A resulting trust is created where the facts indicate an intention that one party hold legal title to the property for the benefit of another or for some other purpose. Unlike an express trust, the grantor's intent is implied from the character of the transaction and the accompanying facts and circumstances surrounding it.  Flanagan v. Herrett, 130 Fla 531 (Fla. 1938).[1]   When a resulting trust is created, the person who holds the

---

[1] A constructive trust also rises by operation of law, but under different circumstances than a resulting trust.  A constructive trust is a remedial device with

property is not entitled to the beneficial interest. Rather, the beneficial interest springs back or results to the person who made the disposition.[2]

Here, Marsby Tribue intended Modesty Kent to act only in a fiduciary capacity. Modesty Kent was to hold legal title to the property for the benefit of Marsby Tribue. Significantly, both Modesty Kent and Marsby Tribue unequivocally declared that they did not intend to convey the real legal title of the property to Modesty Kent. Rather, they sought to set up some type of arrangement which would allow Modesty Kent could to oversee the property in the event that her father became disabled or died. In fact, Marsby Tribue's intention to retain ownership of the property can be evidenced by the fact that he continued to pay taxes on the land when he was able. Modesty Kent did not pay taxes, make improvements, or take any action with respect to the property after the execution of the deed, except to help her mother with the clean-up of the property.[3] She explained that at all times, she understood that her father and

---

dual objectives - - - to restore property to its rightful owner and to prevent unjust enrichment. Abreu v. Amaro, 534 So. 2d 771 (Fla. 3rd DCA 1988). A constructive trust is one raised by equity in respect to property which as been acquired by fraud, or when, though acquired originally without fraud, it is against equity that it should be retained by the person holding it.

[2] Florida Statute, Section 689.05, requires the creation of a trust related to real property to be manifested by some writing, signed by the party authorized to create the trust. As the defendant points out, the only written document related to this transaction is the deed itself, which does not purport to create a trust. Nevertheless, trusts that arise by operation of law, such as resulting trusts and constructive trusts, are equitable remedies recognized by the courts. Thus, they are excepted from the operation of the statute that requires a writing to prove an express or direct trust. See §689.05, Fla. Stat. (2004), Pierson v. Bill, 138 Fla. 104, 189 So. 679 (Fla. 1939); Walker v. Landress, 111 Fla. 356, 149 So. 545 (Fla. 1933); Martin v. Wilson, 115 So. 2d 573 (Fla 1st DCA 1959).

[3] Modesty Kent did pay the 1998 taxes on the property, before the execution of the quit claim deed. She explained that her father was unable to work, and her mother did not have the financial means to pay the taxes. Therefore, she paid them

Case No.: 3:04-cv-286-RV/EMT

mother retained legal title to the property.

The central and dispositive issue for purposes of Marsby Tribue's standing is whether he intended to convey all of his interest in the Okaloosa County property to Modesty Kent when he signed the quit claim deed. While Marsby Tribue and Modesty Kent may not have known the proper way to formalize their arrangement, they both were in mutual agreement that they did not intend to convey all of Marsby Tribue's interest in the property to Modesty Kent. It should be noted that this case is somewhat unusual from the typical case in which the grantor's intent must be inferred after the grantor's death from the circumstances. Here, Marsby Tribue is still alive and was able to clearly indicate to this court his intent at the time of executing the deed. Further, his daughter Modesty Kent does not contest her father's testimony, but instead, fully corroborates it. In response, the defendant has offered no evidence to dispute Marsby Tribue's statement of his intent.

Thus, based on all of the evidence, I find that Marsby Tribue did not intend, at any time, that the transfer of his full legal and beneficial interest take present effect. Instead, a resulting trust was created. Since Marsby Tribue maintains a beneficial interest in the Okaloosa County property, he has standing to bring this Section 1983 action.

Accordingly, the defendant's motion for summary judgment (Doc. 15) based on Marsby Tribue's standing is DENIED.

DONE AND ORDERED this 26th day of January, 2006.

*/s/ Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**

---

out of her personal savings in order to help her parents, but she did not pay the taxes then because she held any legal or equitable interest in the property.

Case No.: 3:04-cv-286-RV/EMT